1  Kenneth D. Freundlich (SBN 119806)
   Michael J. Kaiser (SBN 258717)
2  FREUNDLICH LAW
   16133 Ventura Boulevard, Suite 1270
3  Encino, CA 91436
   P: (310) 275-5350
4  F: (310) 275-5351
   E-Mail: ken@freundlichlaw.com
5          mkaiser@freundlichlaw.com

6
   Attorneys for Plaintiffs
7  Walter Afanasieff, Katie Cazorla,
   The Painted Nail LLC and Katie Cazorla Designs, LLC
8

FILED
CLERK, U.S. DISTRICT COURT

MAR 20 2014

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

ORIGINAL

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11  KATIE CAZORLA, an individual;         Case No. CV14- 2112 MMM-CW
    WALTER AFANASIEFF, an individual;
12  THE PAINTED NAIL LLC, a California     COMPLAINT FOR:
    limited liability company, and KATIE
13  CAZORLA DESIGNS, LLC, a California     1.  CYBERSQUATTING
    limited liability company                 UNDER 15 USC § 1125(d);
14
                Plaintiffs,               2.  CYBERSQUATTING
15                                            UNDER 15 USC § 8131;
            vs.
16                                        3.  CYBERSQUATTING
    KEN HUGHES, an individual; and            UNDER CAL. BUS AND PROF
17  DIGITAL WELDERS, an entity of            CODE § 17525;
    unknown form
18                                        4.  BREACH OF CONTRACT;
                Defendants.
19                                        5.  CONVERSION;

20                                        6.  INTENTIONAL
                                              INTERFERENCE WITH
21                                            CONTRACT;

22                                        7.  UNJUST ENRICMENT;

23                                        8.  CONSTRUCTIVE TRUST; and

24
                                          9.  QUANTUM MERUIT
25
                                          DEMAND FOR JURY TRIAL
26

27

28

Plaintiffs Katie Cazorla ("Cazorla"), Walter Afanasieff ("Afanasieff"), The Painted Nail LLC ("The PN LLC") and Katie Cazorla Designs, LLC ("KCD LLC") (Afanasieff, Cazorla, The PN LLC and KCD LLC are collectively, "Plaintiffs") hereby complain and allege as follows:

## INTRODUCTION

1.     In or about 2012-2014, Defendant Ken Hughes ("Hughes") through his company Defendant Digital Welders ("Digital Welders") (collectively, "Defendants") agreed to design and build websites for Plaintiffs and to register the following domain names (the unique internet address which directs a web surfer to Plaintiffs' designated content) in Plaintiffs' names:

| Domain Name | Plaintiff |
|---|---|
| KatieCazorla.com | Cazorla |
| WalterAfanasieff.com | Afanasieff |
| EverythingNailz.com | Cazorla |
| TheNailCollective.com | Cazorla |
| HiSocietea.com | Cazorla |

2.     Defendants also agreed to maintain Plaintiffs Cazorla and The PN LLC's existing website located at the domain name ThePaintedNail.com (the domain names at issue in this case are respectively, the "KC Domain Name", the "EN Domain Name", the "NC Domain Name", the "HS Domain Name" and the "PN Domain Name"; all five collectively, "Plaintiffs' Domain Names").[1]

3.     Following a falling out between Plaintiffs and Defendants, Defendants went rogue.  Betraying the trust bestowed upon them by Plaintiffs, and breaching their agreement, Defendants have refused to transfer registration of Plaintiffs'

---

[1] The WA Domain Name is not one of Plaintiffs' Domain Names because Defendants have already turned over said domain name and the website content associated with it to Plaintiff Afanasieff.

**COMPLAINT**

1  Domain Names to Plaintiffs (which, Plaintiffs have just discovered, have been

2  registered by Defendants, without Plaintiff's knowledge or approval, in Defendants'

3  name and/or under their sole custody and control and not in Plaintiffs' names and

4  control, thereby blocking Plaintiffs from controlling and/or editing the contents of

5  the websites accessible from the PN Domain Name and the KC Domain Name which

6  Cazorla needs right now in connection with her businesses).

7      4.      Despite Plaintiffs' demand to return Plaintiffs' Domain Names to

8  Plaintiffs, together with the website content,  except for the WA Domain Name and

9  website contents which have already been returned to Afanasieff, [2] Defendants

10  continue to unlawfully exercise dominion over these domain names and the

11  associated websites.  Through Defendants' unlawful conduct, as averred more fully

12  herein, Defendants have not only breached their contract with Plaintiffs and

13  committed torts under California law, they have also violated federal and California

14  law governing cybersquatting.

15      5.      Upon information and belief, Defendant Hughes' residential lease in Los

16  Angeles lapses on March 31, 2014 and he will likely attempt to "escape justice" by

17  returning to his native Canada by or before then.  In addition, as Defendants know

18  well, Plaintiff Cazorla is in the process of launching her business on the EN Domain

19  Name (including a brick-and-mortar *Everything Nailz* store that will be opening in

20  the next few weeks), the NC Domain Name, and the HS Domain Name, as well as

21  expanding her current business on the KC and PN Domain Names (including a new

22  location of *The Painted Nail* salon at the W Hotel in Los Angeles, a high-end salon

23  which will be opening in early April 2014). Any interruption in her ability to deal

24  with her websites has and will continue to have an immediate and irreparable

25  deleterious effect on her business.

26

27  [2] On March 16, 2014, after becoming aware that Plaintiffs intended to assert their rights over
Plaintiffs' Domain Names, Defendant Hughes suddenly transferred the WA Domain Name back to

28  Plaintiff Afanasieff but not the remaining five Plaintiffs' Domain Names.

6.    Accordingly, because of the irreparable harm resulting from the present violation of Plaintiffs' rights, Plaintiffs are filing herewith an *ex parte* application for a temporary restraining order ("TRO"). Plaintiffs seek this TRO to ameliorate the immediate irreparable harm until the Court has time to consider further the merits of Plaintiffs' request for preliminary and permanent injunctive relief and damages, as prayed for herein.

### PARTIES

7.    Plaintiff Afanasieff is an individual, currently residing in Los Angeles, California. He is a multiple Grammy-award-winning record producer and songwriter. He is best known for his long association with Mariah Carey, for whom he was co-producer and co-writer for several years, beginning in 1990. He won the 1999 Grammy Award in the Record of the Year category for producing "My Heart Will Go On" recorded by Celine Dion, and the 2000 Grammy Award for Non-Classical Producer of the Year. Afanasieff has also written and produced music for many other recording artists, including, *inter alia*, Michael Jackson, Whitney Houston, Kenny G, Michael Bolton, Toni Braxton, Andrea Bocelli, Barbra Streisand, Christina Aguilera, and Josh Groban.

8.    Plaintiff Cazorla is an individual, currently residing in Los Angeles, California. She is an actress, stand-up comic, television personality, and entrepreneur with multiple ventures in the nail care industry. She engages in these ventures through multiple limited liability companies including, without limitation, The PN LLC, KCD LLC, and through Plaintiffs' Domain Names (excluding the WA Domain Name).

9.    Plaintiff The PN LLC is a California limited liability company based in Los Angeles and is owned by Cazorla.

10.    Plaintiff KCD LLC is a California limited liability company based in Los Angeles and is owned by Cazorla.

11.     Defendant Hughes is an individual, who, upon information and belief, currently resides in Los Angeles, California.  Upon further information and belief, Hughes is in the business of website design, construction, and maintenance.

12.     Upon information and belief, Hughes provides his website-related services through his company Defendant Digital Welders—a Canadian entity of unknown form.  Upon further information and belief, Digital Welders presently has its principal place of business in Los Angeles, California.

13.     Plaintiffs are informed and believe and based thereon allege that there is a substantial unity of interest between Hughes and Digital Welders in that, among other reasons, Digital Welders is substantially or wholly owned by Hughes. Plaintiffs are further informed and believe and based thereon allege that Hughes exercises complete control over and dominates Digital Welders in all substantive matters, including, but not limited to, the hiring of its officers, the ultimate authority to enter into contracts, the ultimate authority concerning the direction and strategy of litigation, and the control over the distribution and disbursement of assets.  Plaintiffs are further informed and believe and based thereon allege that Hughes holds himself out as the equivalent of Digital Welders.

14.     Plaintiffs are informed and believe and based thereon allege that Hughes exerts, and at all times relevant hereto has exerted, such dominion and control over Digital Welders, and is so intertwined with the business and operations of Digital Welders, that Hughes and Digital Welders are alter egos of each other in relation to the matters alleged herein and in all matters of business.

15.     Plaintiffs are informed and believe and thereon allege that adherence to the fiction of the separate existence of Digital Welders as distinct from Hughes would sanction fraud, permit an abuse of the corporate/limited liability privilege, and would promote injustice, and unless judgment in this action includes all of the Defendants named herein, Plaintiffs may not be able to enforce the claims and rights referred to herein and obtain satisfaction of judgment.

## JURISDICTION AND VENUE

16.     The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338 and 15 U.S.C. § 1121. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

17.     Judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises its subject matter jurisdiction over all causes of action averred herein.

18.     This Court has personal jurisdiction over Defendants because, upon information and belief, they may be found within California.

19.     Further, this Court's exercise of personal jurisdiction over Defendants would comport with the United States Constitution and the long-arm statute of the State of California in the event that Defendants are not found within this District. This is because  Defendants:  (1) Have had systematic and continuous contacts with California; (2) Entered into and breached a contract with California residents (*i.e.,* Plaintiffs);  (3) Are presently and unlawfully exercising dominion over non-passive websites viewable from within California; and/or (4)  Committed tortious acts that they knew or should have known would cause injury to Plaintiffs in California.

20.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) and (2) because, among other things, Plaintiffs are informed and believe and based thereon allege that all Defendants (presently) reside within this District and because a substantial part of the events or omissions giving rise to the claims occurred within this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### Plaintiff Cazorla's The Painted Nail Business

21.     Beginning in 2008, Cazorla created her business, The PN LLC, anchored by a nail salon in Sherman Oaks California called *The Painted Nail*. In addition, in 2008, Cazorla acquired the PN Domain Name from a domain name registry and through the PN Domain Name. which Cazorla advertised and marketed

1  her bricks and mortar business and also built a significant interstate e-commerce

2  business selling nail care products branded with the words "The Painted Nail"

3  (herein referred to as the "The PN Mark").

4      22.    On December 27, 2011, Cazorla, through The PN LLC, obtained a

5  federal registration for The PN Mark (U.S. Reg. No. 4076664). A true and correct

6  copy of the registration is attached as Exhibit A. On the registration, The PN LLC is

7  listed as the Registrant and Owner of The PN Mark.

8      23.    In 2009, Cazorla became the star of a television show called "Nail

9  Files," created by the creators of the widely successful reality show "Jersey Shore."

10  "Nail Files" follows the personal and professional life of Cazorla as she manages her

11  ventures (including, the PN LLC) while juggling her personal life. "Nail Files" aired

12  on the TV Guide Network from 2009-2012 and is expected to air in 2014, was filmed

13  at *The Painted Nail* store, and through the show's national and international

14  distribution and audience, publicized and marketed the PN Mark to a national and

15  international audience.

16      24.    The Painted Nail business has also been the subject of extensive media

17  coverage which has, among other things, been on the worldwide web. Its social

18  media presence is significant - - its Facebook page has 15,000 follower, its verified

19  Twitter feed has 17,600 followers and it has 18,000 followers on Instagram.

20      25.    Upon information and belief, consumers readily identify the PN Mark

21  with Cazorla and the PN LLC because of the aforesaid exposure as well as the fact

22  that The PN Mark has been extensively promoted in the United States and products

23  bearing The PN Mark and its logo have sold through the United States. Consumer

24  identification of The PN Mark is further evinced through the multitude of Internet

25  reviews by customers.

26      26.    The PN Mark has thus become a valuable asset of Plaintiff Cazorla and

27  The PN LLC, symbolizing their high quality goods and services and their goodwill.

28

1    27.    Plaintiff The PN LLC also has common law rights in The PN Mark
2  through the aforesaid use in commerce.

3    28.    The PN LLC has exclusively been using The PN Mark in the United
4  States for at least five years.

5    29.    At the present moment, Plaintiff Cazorla is in the process of opening a
6  new location for *The Painted Nail* salon at the W Hotel in Los Angeles and she has
7  made a lot of effort prior to this time to drive traffic to the PN Domain Name and the
8  web content contained thereon in advance of this opening.

9    30.    In addition, Plaintiff Cazorla is in the current process of launching her
10 wholesale nail supply business using the EN Domain Name and content has not yet
11 been propagated on that domain because of Defendants' wrongful exercise of control
12 over it.

13    31.    The NC Domain Name and the HS Domain Name are future
14 destinations of two of Cazorla's businesses which Cazorla seeks to populate with
15 content and direct people to those domain names.

16 **Plaintiffs' Agreement with Defendants**

17    32.    In or about February-March 2012, Plaintiff Afanasieff met Defendant
18 Hughes when Hughes asked if Afanasieff would create demonstration recordings
19 (the "Demos") of performances of songs written and co-written by Hughes' daughter
20 Alex. Because Hughes did not have the funds to pay for Afanasieff's valuable writing
21 and producing services, Hughes offered to barter his and Digital Welders' services as
22 a web designer for Plaintiffs in exchange for Afanasieff agreeing to create his
23 daughter's Demos.

24    33.    Accordingly, in or about February-March 2012, Plaintiffs and
25 Defendants entered into an oral agreement that Afanasieff would write songs and
26 produce recordings with Hughes' daughter Alex, and Hughes, through Digital
27 Welders, would create and maintain (and in the case of the PN Domain, revise)
28 Plaintiffs' websites accessible through Plaintiffs' Domain Names; and Plaintiffs

1 agreed to reimburse Digital Welders for any out-of-pocket expenses incurred in

2 obtaining registrations for Plaintiffs' Domain Names, and Plaintiffs did in fact do so

3 when requested.

4     34.    Afanasieff fully performed all of his obligations under the oral

5 agreement, including preparing the Demos for Hughes' daughter Alex.

6     35.    Pursuant to the oral agreement, Defendants obtained five new domain

7 registrations from godaddy.com for Plaintiffs: the KC Domain Name, the WA

8 Domain Name, the EN Domain Name, the NC Domain Name, and the HS Domain

9 Name, and created content for and managed the KC Domain Name, the WA Domain

10 Name, and the PN Domain Name as well. Also, Defendants moved the PN Website

11 from its previous registrar to godaddy.com.

12 **The Amended Oral Agreement**

13     36.    In or about August, 2013, with Afanasieff having completed his work

14 on the Demos, the parties agreed that going forward, Plaintiffs would pay to the

15 Defendant Digital Welders a monthly retainer in the sum of $3,000 to cover the web

16 management services. In addition, Plaintiffs paid Digital Welders a one-time $10,000

17 bonus for services previously rendered. Plaintiffs made the monthly payments to the

18 defendants until March 2014 when Defendants resigned their position.

19 **Defendants' Wrongful Acts**

20     37.    Plaintiffs have just learned that instead of simply managing and creating

21 Plaintiffs' web content, Defendants secretly commandeered the registration of the

22 five new Plaintiffs' Domain Names into accounts in Defendants' own name and/or

23 control, without Plaintiffs' consent or knowledge.

24     38.    Plaintiffs have also just learned that Defendants also changed certain

25 contact information for the PN Domain Name so that even though it remains

26 registered in Plaintiff Cazorla's name with godaddy.com, the contact information and

27 administrative "keys" belong to Defendants and not to Plaintiff Cazorla and/or The

28 PN LLC, again all without the knowledge or consent of Plaintiffs.

**COMPLAINT**

39.     Defendants knew that by registering and taking control of Plaintiffs' Domain Names in secret (as Plaintiffs would never have permitted such a thing) as aforesaid, should any disputes arise between them, or should Defendants simply want to hold Plaintiffs' Domains ransom for some untoward business negotiation in the future, Defendants would wrongly control the fate of Plaintiffs' businesses at Defendants' whim.

40.     Aside from the WA Domain Name and the website thereon, Plaintiffs are unable to access ownership and control over their websites and domain names because of Defendants' wrongful conduct and this is causing immediate and irreparable harm to Plaintiffs' ongoing businesses.

**The Nail Alliance Agreement**

41.     In or about August 2013, KCD LLC and Cazorla entered into an agreement with Nail Alliance, LLC (the "Nail Alliance Agreement") pursuant to which the parties agreed to create and market a nail gel product (the "Product"). Upon execution, Nail Alliance paid KCD LLC $100,000 as a "signing bonus" and KCD LLC is obligated, *inter alia,* to incorporate Nail Alliance and the Product, into the website accessible from the KC Domain Name which shall also be linked to other approved internet addresses.

**Defendants Resign and Then Refuse to Turn over Plaintiffs' Domain Names and Website Content**

42.     In or about early March 2014, Defendants and Plaintiffs had a falling out, and Defendants began publically insulting the Plaintiffs on social media. Accordingly, Plaintiffs confirmed in writing that they deemed this disloyalty to be Defendants' resignation from any further services. Plaintiffs had no idea at that time that Plaintiff's Domain Names were not in their names but instead registered and controlled by the Defendants.

43.     Shortly thereafter, on or about March 12, 2014, as she was preparing for the imminent launch of the expansion of The Pained Nail business and the launch of

1  her Everything Nailz store on Ventura Blvd. in Studio City, Plaintiff Cazorla
2  discovered that Defendants had stripped all The PN LLC's web content from the
3  website accessible from the PN Domain Name and pointed that web address to the
4  KC Domain Name instead. Moreover, she discovered for the first time that
5  Defendants had arranged it so that she could not obtain access to the administrator
6  "keys" to either the PN Domain Name, the KC Domain Name and/or the EN Domain
7  Name.

8      44.    Because Cazorla cannot access her websites, there is consumer
9  confusion with respect to the PN LLC's business and she is prevented, at this critical
10 time in her business, from accessing and dealing with her website content which
11 included important marketing material for her immediate needs.

12     45.    Moreover, KCD LLC is unable to provide the web linkage it is required
13 to provide to Nail Alliance pursuant to the Nail Alliance Agreement.

14     46.    Cazorla requested that Defendants transfer her domain names to her or
15 take the steps necessary with godaddy.com to give her access to and control over her
16 domain names and related website content. When Defendants refused to do so,
17 Cazorla contacted godaddy.com directly and was told that without Defendants'
18 consent or a Court Order, godaddy.com would not release the PN Domain or any
19 other of Plaintiffs' Domain Names to Plaintiffs without a Court Order. Defendants
20 have effectively locked Plaintiff Cazorla out of her own websites at a most critical
21 juncture in her business.

22     47.    On or about March 11, 2014 (and again on or about March 12 and 13,
23 2014) counsel for Plaintiffs wrote to Defendants in an attempt to obtain the domains
24 back for the Plaintiffs, and on or about March 11 and 13, 2014, Defendants wrote
25 back making it clear that they would not turn over Plaintiffs' property voluntarily.

26     48.    Surprisingly over the weekend of March 15, 2014, Defendants
27 transferred the WA Domain Name back to Plaintiff Afanasieff although Defendants
28 continues to refuse to do the same with the other Plaintiffs' valuable domain names

1 causing them immediate and irreparable harm as they prepare to open a new business
2 and expand existing ones.

3     49.    To this day, Defendants refuse to transfer to Plaintiffs registration in
4 and/or control over Plaintiffs' Domain Names (other than the WA Domain) and
5 associated website content. Accordingly, Defendants are wrongfully exercising
6 dominion thereover, thereby violating state and federal law, as alleged herein.

7     50.    At all relevant times, it was the parties' understanding that Plaintiffs'
8 Domain Names and the content on the associated websites would be and remain
9 Plaintiffs' property. Moreover, with respect to the KC Domain and the PN Domain,
10 Plaintiffs Cazorla's and The PN LLC's personal name and trademark respectively
11 appear within— and thus state and federal law, as averred herein, grant Plaintiffs'
12 exclusive ownership in those domain names on this basis as well

13 **COUNT ONE**

14 **Cybersquatting 15 USC § 1125(d) as to ThePaintedNail.Com**

15 **(By Plaintiff The PN LLC against All Defendants)**

16     51.    Plaintiff The PN LLC hereby incorporates paragraphs 1 through 50 as
17 though set forth fully herein.

18     52.    Defendants have registered, trafficked in, and/or used the PN Domain
19 that is identical or confusingly similar to and/or dilutive of The PN Mark, which was
20 distinctive and/or famous at the time of registration of the domain name.

21     53.    Plaintiff The PN LLC is informed and believe and based thereon alleges
22 that Defendants had and/or have a bad-faith intent to profit therefrom by, *inter alia*,
23 harming Plaintiffs' business interests and holding this domain name as ransom to
24 extort money from Plaintiffs.

25     54.    Defendants' bad-faith intent to profit is reflected in, *inter alia*: (1)
26 Defendants have no trademark rights in the domain name at issue; (2) the domain
27 name at issue does not contain any of Defendants' legal names; (3) that it was
28 Plaintiff Cazorla and The PN LLC, and not Defendants, who in connection with the

12
**COMPLAINT**

domain name, offered bona fide good and/or services (*e.g.*, selling The Painted Nail nail polish); (4) Defendants have not made any bona fide noncommercial or fair use of The PN Mark; (5) Upon information and belief, by using words identical to The PN Mark in the domain name at issue, Defendants intend to divert customers away from Plaintiffs and their businesses, or prevent the Plaintiffs from communicating with their clients who already do business through the PN Domain, thereby creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the domain name at issue, which will undoubtedly harm the goodwill and reputation created by The PN Mark; and (6) Defendants' supplied unauthorized contact information when registering the domain name (*e.g.*, Defendants' providing godaddy.com with Defendants' e-mail address rather than Cazorla's, and Defendants' registering the domain name under Defendants' godaddy.com domain account rather than Cazorla's or The Painted Nail LLC's).

55.     As a direct and proximate result of Defendants' conduct, which violates 15 USC § 1125(d), Plaintiff The PN LLC has suffered, and will continue to suffer, monetary loss and irreparable injury.

**COUNT TWO**

**Cybersquatting 15 USC § 8131 as to KatieCazorla.com**

**(By Plaintiff Cazorla against All Defendants)**

56.     Plaintiffs hereby incorporate paragraphs 1 through55 as though set forth fully herein.

57.     The domain name KatieCazorla.com (*i.e.,* the KC Domain) consists of the name of Plaintiff Cazorla, who is a living person.

58.     This domain name registered by Defendants is identical or confusingly similar to Cazorla's first and last name—Katie Cazorla.

59.     Upon information and belief, Defendants registered this domain name in Defendants' names, with Defendants' e-mail address, and under Defendants' GoDaddy.com domain name account without Plaintiff's consent and with the specific

13

**COMPLAINT**

1  intent to profit from by selling these domain names for financial gain to Plaintiff or
2  third parties.

3      60.    Such intent to profit is also evinced through Defendants' "cyber
4  extortion," as alleged herein.

5      61.    Furthermore, intent to profit is also reflected in the following, *inter alia*:
6  (1)  That it was Cazorla, and not Defendants, who in connection with the domain
7  name, offered bona fide good and/or services; (2)  That Defendants do not have
8  Cazorla's consent to traffic in and/or use these domain names; (3) Upon information
9  and belief, Defendants' intent to divert consumers from Cazorla's online location to a
10  site accessible under this domain name that could harm the goodwill represented by
11  Cazorla's name either for commercial gain or with the intent to tarnish or disparage
12  Cazorla's name by creating a likelihood of confusion as to the source, sponsorship,
13  affiliation, or endorsement of the site; (4) Defendants falsely listed themselves as the
14  "registrants," provided Defendants' e-mail address and contact information rather
15  than Cazorla's, and placed the domain names in Defendants' GoDaddy.Com domain
16  account rather than Cazorla's; (5)  Defendants neither sought nor obtain permission
17  from Cazorla to register the domain names in this false manner, and Defendants do
18  not have Cazorla's permission to use the domain name; and (6) Defendants are repeat
19  offenders as they also had unlawfully registered a domain name containing Plaintiff
20  Afanasieff's name, in addition to the other cybersquatting alleged herein.

21      62.    As a direct and proximate result of Defendants' conduct, which violates
22  15 USC § 8131, Plaintiff Cazorla has suffered, and will continue to suffer, monetary
23  loss and irreparable injury.

24              **COUNT THREE**

25  **Cybersquatting Cal. Bus. and Prof. Code § 17525 as to KatieCazorla.com**

26      **(By Plaintiff Cazorla against All Defendants)**

27      63.    Plaintiffs hereby incorporate paragraphs 1 through 62 as though set forth
28  fully herein.

---

14

**COMPLAINT**

1     64.    The domain name KatieCazorla.com (*i.e.,* the KC Domain Name)

2 consists of the name of Plaintiff Katie Cazorla, whom is a living person.

3     65.    This domain name registered by Defendants is identical or confusingly

4 similar to Plaintiff Cazorla's first and last name—Katie Cazorla.

5     66.    Upon information and belief, Defendants had and/or have a bad faith

6 intent in registering, trafficking in, and/or using these domain names.

7     67.    Defendants' bad-faith intent is reflected in, *inter alia*: (1) That it was

8 Cazorla, and not Defendants, who in connection with the domain name, offered bona

9 fide good and/or services; (2) That Defendants do not have Plaintiff Cazorla's

10 consent to traffic in and/or use this domain name; (3) Upon information and belief,

11 Defendants' intent to divert consumers from Cazorla's online location to a site

12 accessible under this domain name that could harm the goodwill represented by

13 Cazorla's name either for commercial gain or with the intent to tarnish or disparage

14 Cazorla's name by creating a likelihood of confusion as to the source, sponsorship,

15 affiliation, or endorsement of the sites; (4) Defendants falsely listed themselves as

16 the "registrants," provided Defendants' e-mail address and contact information rather

17 than Cazorla's, and placed the domain names in Defendants' godaddy.com domain

18 account rather than Cazorla's; (5) Defendants neither sought nor obtain permission

19 from Cazorla to register the domain names in this false manner, and Defendants do

20 not have Cazorla's permission to use the domain name; and (6) Defendants are repeat

21 offenders as they also had unlawfully registered a domain name containing Plaintiff

22 Afanasieff's name, in addition to the other cybersquatting alleged herein.

23     68.    As a direct and proximate result of Defendants' conduct, which violates

24 Cal. Bus. and Prof. Code § 17525, Plaintiff Cazorla have suffered, and will continue

25 to suffer, monetary loss and irreparable injury.

26                          **COUNT FOUR**

27                   **For Breach of Contract**

28            **(All Plaintiffs against All Defendants)**

69.     Plaintiffs hereby incorporate paragraphs 1 through 68 as though set forth fully herein.

70.     Plaintiffs paid Defendants good and valuable consideration for Defendants to purchase and register Plaintiffs' Domain Names on Plaintiffs' behalf.

71.     Defendants breached the aforesaid agreement by registering those domain names in Defendants' names and by providing Defendants' contact information with the domain registrar, thus preventing Plaintiffs from taking title and possession of said domain names.

72.     For good and valuable consideration, Defendants also agreed to design and build content for the websites associated with Plaintiffs' Domain Names, and to maintain said websites.  It was agreed between the parties that all website content would be and remain the exclusive property of Plaintiffs.

73.     Defendants breached the aforesaid agreement by refusing to deliver to Plaintiffs exclusive title to and possession of this property.

74.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered, and will continue to suffer, monetary loss and irreparable injury.

75.     Furthermore, as a direct and proximate result of Defendants' conduct, Plaintiffs have suffered consequential damages which were reasonably foreseeable at all relevant times.

## COUNT FIVE

### For Conversion

### (By All Plaintiffs against All Defendants)

76.     Plaintiffs hereby incorporate paragraphs 1 through 75 as though set forth fully herein.

77.     Plaintiffs own and/or have a right to possess Plaintiffs' Domain Names and all associated website content.

78.     By Defendants' conduct, Defendants have substantially interfered with Plaintiffs' aforesaid property through Defendants' wrongful possession of such

16
COMPLAINT

1  property, whereby Defendants have prevented Plaintiffs from having access to the
2  property.

3      79.    Plaintiffs did not and do not consent.  Indeed, Plaintiffs have demanded
4  that Defendants deliver said property to Plaintiffs, yet Defendants refuse (with the
5  exception of the WA Domain and the related website content).

6      80.    Plaintiffs have been harmed by Defendants' conduct, and such conduct
7  was and is a substantial factor in causing Plaintiffs harm.

8      81.    As a direct and proximate result of Defendants' conduct, Plaintiffs have
9  suffered, and will continue to suffer, monetary loss and irreparable injury.

10     82.    Defendants' aforementioned conduct was fraudulent, oppressive,
11  malicious and constituted a willful attack on Plaintiffs' rights and therefore, Plaintiffs
12  are entitled, in addition to compensatory damages and other relief, to punitive
13  damages, in an amount sufficient to punish Defendants and to deter others from
14  engaging in similar misconduct.

### COUNT SIX

#### For Intentional Interference With Contract

#### (By Cazorla and KCD LLC Against all Defendants)

18     83.    Plaintiffs repeats, realleges and incorporates each and every allegation
19  contained in Paragraphs 1 through 82, inclusive as though fully set forth herein.

20     84.    At all times material hereto, there existed a contractual relationship
21  between Cazorla and KCD LLC, on the one hand, and the Nail Alliance, LLC in the
22  form of the Nail Alliance Agreement.

23     85.    At all times material hereto, Defendants knew of the Nail Alliance
24  Agreement and that it was extant and in effect and that pursuant thereto, Kazorla and
25  KCD LLC had the obligation to incorporate and affiliate products on the KC Domain
26  Name website and link it to mutually approved internet addresses as directed by Nail
27  Alliance.

28

86.    Plaintiffs are informed and believes and thereon alleges that, with utter disregard for Cazorla and KCD LLC's rights and obligations under the Nail Alliance. Indeed, Defendants have coordinated and executed a malicious plan to harm Cazorla and KCD LLC's relationship with Nail Alliance.

87.    By reason of the foregoing, and as a direct and proximate result thereof, Plaintiffs Cazorla and KCD LLC have been damaged in an amount to be proved at trial but believed to exceed One Hundred Thousand Dollars ($100,000.00).

88.    Defendants' aforementioned conduct was fraudulent, oppressive, malicious and constituted a willful attack on Cazorla and KCD LLC's rights and therefore, Plaintiff , Cazorla and KCD, LLCis entitled, in addition to compensatory damages, to punitive damages, in an amount sufficient to punish Defendants and to deter others from engaging in similar misconduct.

## COUNT SEVEN

### For Unjust Enrichment

### (By All Plaintiffs against All Defendants)

89.    Plaintiffs hereby incorporate paragraphs 1 through 88 as though set forth fully herein.

90.    Based upon Defendants' wrongful conduct and possession over Plaintiffs' Domain Names and associated website content, Defendants will be unjustly enriched if they are allowed to retain this property.

91.    Accordingly, and in the alternative to the injunctive relief prayed for herein, Plaintiffs are entitled to an Order of restitution, requiring Defendants to deliver to Plaintiffs the aforementioned property presently in Defendants' possession, custody, and control.

COMPLAINT

## COUNT EIGHT

### For Quantum Meruit

### (By Afanasieff against All Defendants)

92.     Plaintiffs hereby incorporate paragraphs 1 through 91 as though set forth fully herein.

93.     During the course of his relationship with Hughes and Digital Welders, Afanasieff provided valuable services to Hughes and his family in the form of the creation of the Demos.

94.     Hughes has acted wrongfully as alleged above, but he and his family continue to retain and benefit from the services that Afanasieff performed on their behalf.

95.     Afanasieff is entitled to receive as damages an amount equal to the reasonable value of the services Afanasieff rendered to Hughes' family which has a value of at least $50,000.00.

### PRAYER

WHEREFORE, Plaintiffs, and each of them, pray for judgment against Defendants, and each of them, as follows:

1.     A TRO in accordance with the *ex parte* application filed herewith;

2.     Preliminary and permanent injunctions prohibiting (other than as directed by the Court for Plaintiffs' benefit) Defendants, their respective officers, agents, servants, employees and/or all persons acting in concert or participation with them, from accessing, modifying, and/or hypothecating Plaintiffs' Domain Names— (1) KatieCazorla.com; (2) ThePaintedNail.com; (3) EverythingNailz.com; (4) TheNailCollective.com; (5) HiSocietea.com —as well as the domain name registrations and website content associated therewith.

3.     Preliminary and permanent injunctions prohibiting Defendants, their respective officers, agents, servants, employees and/or all persons acting in concert or participation with them, from:  (1)  using THE PAINTED NAIL trademark (U.S.

1  Reg. No. 4076664) (or confusingly similar variations thereof, alone or in

2  combination with any other letters, words, letter strings, phrases or designs), in

3  commerce or in connection with any business or for any other purpose (including,

4  but not limited to, on websites and in domain names); and (2) registering, owning,

5  leasing, selling, or trafficking in any domain names containing THE PAINTED

6  NAIL trademark or confusingly similar variations thereof, alone or in combination

7  with any other letters, words, phrases or designs;

8       4.     Preliminary and permanent injunctions prohibiting Defendants, their

9  respective officers, agents, servants, employees and/or all persons acting in concert

10  or participation with them, from: (1) using the name "Katie Cazorla" or confusingly

11  similar variations thereof, alone or in combination with any other letters, words,

12  letter strings, phrases or designs, in commerce or in connection with any business or

13  for any other purpose (including, but not limited to, on websites and in domain

14  names); and (2) registering, owning, leasing, selling, or trafficking in any domain

15  names containing the name "Katie Cazorla" or confusingly similar variations thereof,

16  alone or in combination with any other letters, words, phrases or designs.

17       5.     Preliminary and permanent injunctions requiring: (1) the current

18  domain registrar and/or successor registrars to transfer the KatieCazorla.com domain

19  to Plaintiff Katie Cazorla; and (2) Defendants to transfer the KatieCazorla.com

20  domain and all content on the KatieCazorla.com website to Plaintiff Katie Cazorla.

21       6.     Preliminary and permanent injunctions requiring: (1) the current

22  domain registrar and/or successor registrars to correct the registration information to

23  reflect to Cazorla's and/or The Painted Nail LLC's e-mail address, contact

24  information and domain registrar account, *inter alia*; (2) Defendants to correct the

25  registration information to reflect Cazorla's and/or The Painted Nail LLC's e-mail

26  address, contact information and domain registrar account, *inter alia*; (3) the current

27  domain registrar and/or successor registrars to transfer ThePaintedNail.com domain

28  to Plaintiffs The Painted Nail LLC and/or Cazorla, to the extent the current domain

**COMPLAINT**

1  registrar and/or successor registrars do not recognize Cazorla and/or The Painted
2  Nail LLC as the owner(s) of the domain with all attendant rights and privileges; (4)
3  Defendants to transfer ThePaintedNail.com domain to Plaintiffs The Painted Nail
4  LLC and/or Cazorla, to the extent the current domain registrar and/or successor
5  registrars do not recognize Cazorla and/or The Painted Nail LLC as the owner(s) of
6  the domain with all attendant rights and privileges; and (5) Defendants to transfer to
7  Plaintiffs Cazorla and/or The Painted Nail, LLC, all website content referring or
8  relating to the business of The Paint Nail, LLC in Defendants' possession, custody
9  and/or control.

10      7.      Preliminary and permanent injunctions requiring:  (1) the current
11  domain registrar and/or successor registrars to transfer the EverythingNailz.com
12  domain to Plaintiff Katie Cazorla; and (2) Defendants to transfer the
13  EverythingNailz.com domain and all content on the EverythingNailz.com website to
14  Plaintiff Katie Cazorla.

15      8.      Preliminary and permanent injunctions requiring:  (1) the current
16  domain registrar and/or successor registrars to transfer the TheNailCollective.com
17  domain to Plaintiff Katie Cazorla; and (2) Defendants to transfer the
18  TheNailCollective.com domain and all content on the TheNailCollective.com
19  website to Plaintiff Katie Cazorla.

20      9.      Preliminary and permanent injunctions requiring:  (1) the current
21  domain registrar and/or successor registrars to transfer the HiSocietea.com domain to
22  Plaintiff Katie Cazorla; and (2) Defendants to transfer the HiSocietea.com domain
23  and all content on the HighSociety.com website to Plaintiff Katie Cazorla.

24      10.     Preliminary injunction requiring the current domain registrar (and/or
25  successor registrars) to "lock"  (to prevent modification and hypothecation of) (1)
26  KatieCazorla.com, (2) ThePaintedNail.com, (3) EverythingNailz.com, (4)
27  TheNailCollective.com, and (5) HiSocietea.com, to the extent the Court does not

28

1  order via TRO or preliminary injunction that these domain names and related website

2  content be transferred to Plaintiffs during the pendency of this action.

3      11.    Restitution, in the event any or all of the above property cannot be

4  returned to Plaintiffs through injunctive relief.

5      12.    For compensatory damages, in an amount not yet fully ascertained but

6  believed to be in excess of $100,000, or according to proof at trial, plus interest

7  thereon at the legal rate;

8      13.    For punitive damages, in an amount not yet fully ascertained, according

9  to proof at trial, plus interest thereon at the legal rate;

10      14.    A constructive trust, in the event any or all of the above property cannot

11  be returned to Plaintiffs through injunctive relief or via restitution.

12      15.    For damages equal to the reasonable value of the service Afanasieff

13  rendered to Defendants, according to proof at trial, plus interest thereon at the legal rate;

14      16.    An award of consequential damages, to the fullest extent permitted by

15  law and in amount to be determined at trial;

16      17.    An award of statutory damages, to the fullest extent permitted by law

17  and in amount to be determined at trial;

18      18.    An award of interest, costs, and attorney's fees incurred by Plaintiffs in

19  prosecuting this action; and

20      19.    All other relief that the Court deems just and proper.

21  DATED: March 19, 2014             FREUNDLICH LAW

22

23

24                                Kenneth D. Freundlich

25                                Michael J. Kaiser

                              Attorneys for Plaintiffs

26                                Afanasieff, Katie Cazorla,

                              The Painted Nail LLC and Katie Cazorla

27                                Designs, LLC

28

**COMPLAINT**

# DEMAND FOR JURY TRIAL

Plaintiffs hereby request trial by jury of all issues and claims as permitted by law.

DATED: March 19, 2014

FREUNDLICH LAW

Kenneth D. Freundlich
Michael J. Kaiser
Attorneys for Plaintiffs
Afanasieff, Katie Cazorla, The Painted Nail
LLC, and Katie Cazorla Designs, LLC

**COMPLAINT**



### United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat Mar 15 03:10:41 EDT 2014*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

**Logout**  Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | **THE PAINTED NAIL** |
| **Goods and Services** | IC 044. US 100 101. G & S: Nail care salons. FIRST USE: 20081008. FIRST USE IN COMMERCE: 20081101 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 24.11.02 - Crowns open at the top<br>24.15.10 - Arrows, more than one; More than one arrow<br>24.15.25 - Other arrows<br>25.01.25 - Borders, ornamental; Other framework and ornamental borders<br>26.01.26 - Coils; Spirals; Swirls<br>26.03.02 - Ovals, plain single line; Plain single line ovals<br>26.03.11 - Letters, numerals, punctuation, geometric figures, objects, humans, plants or animals comprising an oval; Ovals comprised of animals; Ovals comprised of geometric figures; Ovals comprised of humans; Ovals comprised of letters or numerals; Ovals comprised of plants; Ovals comprised of punctuation<br>26.03.17 - Concentric ovals; Concentric ovals and ovals within ovals; Ovals within ovals; Ovals, concentric<br>26.17.09 - Bands, curved; Bars, curved; Curved line(s), band(s) or bar(s); Lines, curved |
| **Serial Number** | 85314046 |
| **Filing Date** | May 6, 2011 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |

Case 2:14-cv-02112-MMM-CW   Document 1   Filed 03/20/14   Page 26 of 30   Page ID #:26

| | |
|---|---|
| **Published for Opposition** | October 11, 2011 |
| **Registration Number** | 4076664 |
| **Registration Date** | December 27, 2011 |
| **Owner** | (REGISTRANT) The Painted Nail LIMITED LIABILITY COMPANY CALIFORNIA 13327 Ventura Blvd Sherman Oaks CALIFORNIA 91423 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "NAIL" APART FROM THE MARK AS SHOWN |
| **Description of Mark** | Color is not claimed as a feature of the mark. The mark consists of a crown on the top center of two concentric ovals, with swirls and arrows on the side. In the middle of the ovals is the stylized text "The Painted Nail". |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ ) | **DEFENDANTS** ( Check box if you are representing yourself ☐ ) |
|---|---|
| KATIE CAZORLA, an individual; WALTER AFANASIEFF, an individual; THE PAINTED NAIL LLC, a California limited liability company, and KATIE CAZORLA DESIGNS, LLC, a California limited liability company | KEN HUGHES, an individual; and DIGITAL WELDERS, an entity of unknown form |

| (b) County of Residence of First Listed Plaintiff | County of Residence of First Listed Defendant   U.S. |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| (c) Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. | Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. |
|---|---|
| Kenneth D. Freundlich (SBN 119806) Michael J. Kaiser (SBN 258717) FREUNDLICH LAW 16133 Ventura Boulevard, Suite 1270, Encino CA 91436 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES-**For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding   ☐ 2. Removed from State Court   ☐ 3. Remanded from Appellate Court   ☐ 4. Reinstated or Reopened   ☐ 5. Transferred from Another District (Specify)   ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ According to proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Federal: Anticybersquatting Consumer Protection Act (15 USC § 1125(d) and 15 USC § 8131). California: Cal. Bus. and Prof. Code § 17525 (re cybersquatting); breach of contract; conversion; intentional interference with contract; unjust enrichment; constructive trust; and quantum meruit

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☒ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**   Case Number:   CV14-2112

CV-71 (11/13)   CIVIL COVER SHEET   Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [ ] Yes [X] No | [ ] Los Angeles | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS |
|---|---|---|---|
| | A PLAINTIFF? Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT? Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| [ ] Yes [X] No | [ ] Los Angeles | [ ] Los Angeles | Western |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Ventura, Santa Barbara, or San Luis Obispo | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | [ ] Riverside or San Bernardino | Eastern |
| | [ ] Other | [ ] Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | [X] | [ ] | [ ] | [ ] | [ ] | [ ] |
| Indicate the location in which a majority of defendants reside: | [X] | [ ] | [ ] | [ ] | [ ] | [ ] |
| Indicate the location in which a majority of claims arose: | [X] | [ ] | [ ] | [ ] | [ ] | [ ] |

**C.1. Is either of the following true? If so, check the one that applies:**

[ ] 2 or more answers in Column C

[ ] only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2. Is either of the following true? If so, check the one that applies:**

[ ] 2 or more answers in Column D

[ ] only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Western |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed **in this court** that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐   A. Arise from the same or closely related transactions, happenings, or events; or

☐   B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐   C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐   D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _____   DATE: 3-20-14

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ Margaret M. Morrow _____ and the assigned Magistrate Judge is _____ Carla Woehrle _____ .

The case number on all documents filed with the Court should read as follows:

### 2:14-cv-02112 MMM-CWx

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

March 20, 2014

Date

By  SBOURGEOIS

Deputy Clerk

---

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| [x] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**